IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARTINA R. FORD,

    Plaintiff,

vs.   CASE NO. 1:15-cv-6-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). ECF No. 1. The Commissioner has answered (ECF No. 9), and both parties have filed briefs outlining their respective positions. ECF Nos. 13, 14. For the reasons discussed below, it is respectfully recommended that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI on June 30, 2011, alleging disability due to bipolar disorder, depression, and mood disorder. R. 251. Her application

was denied initially and upon reconsideration.  R. 92, 93.  A hearing was held before an Administrative Law Judge (ALJ) in April 2013 at which Plaintiff and a Vocational Expert (VE) testified, and the ALJ denied Plaintiff's claim in a decision dated May 30, 2013.  R. 27-44, 49-86.  The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  R. 1-5.  This appeal followed.  Plaintiff raises one issue for review:  Whether the ALJ erred by failing to take into account the VE's testimony in response to Plaintiff's counsel's hypothetical that no employment would be available to an individual with a marked inability to appropriately interact with supervisors, coworkers, and the public.  ECF No. 13.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389,

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be

---

401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[8] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[9] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[9] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

claimant is disabled or not disabled.[10]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[11] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[12]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[13] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such

---

[10] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[11] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[12] Walker, 826 F.2d at 1003.

[13] Wolfe, 86 F.3d at 1077-78.

evidence.[14]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

#### A.  Hearing Testimony

Plaintiff was 48 years old at the time of the hearing and has a high school education.  She testified that she is homeless but that she lived with different family members.  She stated that she is not allowed to be around her grandchildren much due to her mental health problems.  Plaintiff receives mental health treatment at Meridian Behavioral Health and receives assistance in paying for her medications.  She did not have issues getting her medication.   Plaintiff had worked sporadically in food service.

Plaintiff testified that she has a diagnosis of bipolar disorder with some psychosis.  She takes medication for that and for anger.  She stated that she has good days and bad days, but medication helps her calm down and control her anger.  She testified that she has wanted to hurt others and herself.   Plaintiff was in jail for trying to kill her daughter, and she tried to cut her boyfriend with a knife about two months before the hearing.

---

[14] *See id.*

Plaintiff had a history of cocaine and marijuana use, but had not used cocaine for three years or marijuana for one year. She testified that she was able to stop using drugs because she began attending church.

Plaintiff's church activities included serving as an usher twice a month and belonging to a women's ministry. As an usher, she directs people to their seats, sets up water for the pastor and his guests, and assists congregation members and their children. Her women's ministry meets every Tuesday to study and discuss the Bible for an hour.

Plaintiff testified that in addition to mental issues she has back pain for which she has been prescribed medication, but she cannot afford it. Her back pain affects her ability to walk, ride in the car, and do housework. Plaintiff shops at Wal-Mart for clothing and toiletries, although she doesn't like to go out because she is afraid of other people. Her mother or daughter provide transportation.

On examination by her counsel, Plaintiff testified that on a bad day she wants to hurt herself or hurt other people because they look at her the wrong way. She attempted suicide by taking a handful of Tylenol and cutting her wrists. Plaintiff testified that once she was riding the bus and had to get off because people were standing too near to her. She also left

a family function because relatives she did not know approached her and she was afraid of them. She once slapped a girl because a voice in her head told her to. The voices sometimes tell her that bad things are going to happen to her family. Plaintiff testified that she feels depressed every day, and will sometimes cry and pray off and on.

The ALJ posed a hypothetical to the VE that included: avoiding crowded work settings; avoiding dangerous work hazards; routine, uninvolved type of work activities at a non-production rate pace; no more than occasional work interactions with coworkers and supervisors and no public contact work. The VE testified that Plaintiff could perform her past work as a cook helper as well as other jobs including commercial or institutional cleaner, hospital cleaner, and housekeeping cleaner. The ALJ then added the limitation that the person would be off task for 20 percent of the workday, and the VE responded that all jobs would be eliminated.

Plaintiff's counsel then asked the VE to consider the ALJ's first hypothetical but add to it that "two thirds of the time the person would not interact appropriately with either their supervisor or any coworkers." The VE stated that if a person was unable to respond appropriately for two-thirds of the time, they could not meet the basic mental demands for

unskilled work. Counsel explained that what he meant was to assume that "the person does not normally have to interact more than a third of the workday with either supervisors or coworkers. But then assume that, even with that limitation of only having to do that a third of the time, that they'll still be inappropriate a third of that time, or two thirds of that time, between one third and two thirds, I guess." The ALJ then asked whether a person who interacted inappropriately 10 percent of the workday could meet basic work demands, and the VE responded that they could not. R. 81-85.

### B. Medical Records

The mental health records that are relevant to Plaintiff's claim are discussed in the ALJ's decision, and Plaintiff has incorporated that discussion of the records verbatim in her brief on appeal. Plaintiff's argument on appeal focuses particularly on the findings of consultative psychologist Diana Benton. *See* R. 35-38; ECF No. 13.

To summarize, Plaintiff's Meridian treatment notes reflect a history of noncompliance with treatment. R. 442. In September 2012, Plaintiff reported that she had run out of her medications and then attacked her daughter a few days later. R. 461. January 2013, Plaintiff reported that she often did not take her morning medication due to sedation. R. 457.

Plaintiff was Baker Acted in December 2010 due to an intentional overdose with Tylenol.  She had relapsed with cocaine use a week prior to the admission, and stated that she used marijuana every other day.  She was diagnosed with depressive disorder, psychotic disorder, and cocaine abuse.  R. 333-36.

Plaintiff presented to Meridian in August 2012 verbalizing suicidal and homicidal ideation.  She indicated that she had been off of her medication.  She was diagnosed with a mood disorder and admitted to the inpatient crisis stabilization unit.  Her GAF was 61-70.  R. 441-46.

In December 2012, Plaintiff reported suicidal ideation and was again voluntarily admitted.  She reported hearing voices that tell her to kill herself, and paranoia.  The intake form noted as "strengths" Plaintiff's participation in church activities, including helping in the church kitchen and being involved in bible study.  It was recommended that she be transferred to the inpatient psychiatric unit.  She was diagnosed with a psychotic disorder and her assigned GAF was 30.  R. 468-71.

On December 14, 2012, Plaintiff underwent a consultative examination by Diana Benton, Psy.D.  Plaintiff reported that her symptoms had started three or four years previously with auditory hallucinations, and

that she had received treatment at Meridian for three years, including medication. She stated that she had tried to kill herself and her daughter. She reported that she was able to care for her personal needs, cook, grocery shop, and drive. She reported that she sees her mother and uncle every day or every other day, and attends church every Sunday. R. 447-53; 454-55.

Following her interview and mental status examination, Dr. Benton diagnosed Plaintiff with bipolar I disorder, mixed with psychotic features; cocaine dependency by history; and alcohol abuse by history. The Axis II diagnosis was rule out borderline intellectual functioning. Dr. Benton noted that Plaintiff "appears to have mood-related impairment in her capacity for concentration, persistence, social interaction, and adaptation, which may be problematic in a work setting. Given her mood instability, including recent mental health admissions, the prognosis for her ability to maintain employment at this time appears guarded to poor. The prognosis may improve with continued mental health treatment." *Id*. at 450.

Dr. Benton's Medical Source Statement assessed Plaintiff with mild restriction in ability to understand and remember simple instructions; moderate restriction in ability to carry out simple instructions; and moderate

restriction in ability to make judgments on simple work-related decisions. She had moderate to marked limitation in her ability to understand, remember, and carry out complex instructions, and marked restriction in the ability to make judgments on complex work-related decisions. She had marked restrictions in the ability to respond appropriately to usual work situations and to changes in a routine work setting. R. 451-53.

## C. ALJ's Decision

The ALJ determined that Plaintiff had the severe impairments of lumbar and cervical spine disorders, bipolar disorder with psychosis, history of cocaine abuse, and history of marijuana abuse, but that Plaintiff's impairments did not meet or medically equal the listings. Based on Plaintiff's medical records, the ALJ determined that Plaintiff had the RFC to perform a full range of medium work, except she must avoid ladder, rope or scaffold climbing, crowded work settings, and dangerous work hazards. She was further limited to routine, uninvolved tasks at a non-production rate pace not requiring more than occasional required work interactions with coworkers and supervisors, and not requiring any public contact work. R. 32-34.

The ALJ accorded "some" weight to Dr. Benton's assessment, but

found that Plaintiff was not as limited as suggested by Dr. Benton's report in view of the record as a whole, including Plaintiff's active participation in church as an usher and member of the women's ministry, and Plaintiff's case management progress notes from Meridian. The notes showed that in April 2012 Plaintiff met with her case manager and informed her that she was traveling to Orlando for three weeks in order to assist an aunt who had lost a loved one. Plaintiff stated that she would stay with her aunt and help out around her home, but would return sooner if necessary to attend her social security hearing. R. 37; R. 410.

The ALJ stated that Plaintiff's RFC provided for reduced social interactions and crowd exposure "so that her tendency to respond inappropriately at times is reduced to tolerable levels." R. 37. The ALJ further pointed to evidence in the record that Plaintiff's mental health was manageable with medication, if taken as prescribed. The ALJ also noted that Plaintiff's case manager had recommended her for vocational rehabilitation, that Plaintiff had expressed a desire to get a job which would also provide Plaintiff with a social outlet to make friends, and that Plaintiff had stated she would like to be a cook at Bridge House and liked to sit with elderly people. Plaintiff expressed that if she had to work, she would like a

career in cooking. R. 37, 412, 416. The ALJ concluded that Plaintiff's statements indicated a willingness and ability to work, but in November 2012 Plaintiff stated that she had not procured employment because of her pending disability claim. R. 37, R. 472. The ALJ further concluded that Plaintiff's ability to attend church weekly, act as an usher, and participate in a women's ministry suggested that she had the ability to control her emotions enough to work in socially isolated settings on a sustained basis. R. 38-39.

The ALJ found that Plaintiff's past work as a cook helper and counter-supply worker was not performed at substantial gainful activity levels, and therefore Plaintiff was unable to perform past relevant work. Based on Plaintiff's age, education, work experience, and RFC, and relying on the testimony of the VE, the ALJ found that Plaintiff could perform the requirements of representative occupations such as hospital cleaner and housekeeping cleaner. The ALJ therefore determined that Plaintiff is not disabled. R. 39-30.

## IV. DISCUSSION

Plaintiff contends that the ALJ's hypothetical did not reasonably account for Plaintiff's "marked" inability to interact appropriately with

supervisors, coworkers, or the public. Plaintiff contends that even if she is theoretically able to appropriately interact up to one-third of the workday, there is no way to ensure that the specific time she is able to interact will "coincide with the real-time minutes that she is required to interact." ECF No. 13 at 25-26. Plaintiff posits that the VE testified that if she is unable to be appropriate during the time that she is required to interact, then all jobs are eliminated. *Id*. at 27.

Plaintiff does not challenge the ALJ's conclusion that Dr. Benton's opinion was entitled to only "some" weight with respect to her assessment of Plaintiff's limitation in social interaction, based on the ALJ's assessment of the record as a whole. The ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's impairments when presenting a hypothetical question to a VE.[15] The Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC. In order for a response to a hypothetical question to constitute substantial evidence of work available to the claimant, the question must

---

[15] Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

set out all of the claimant's impairments.[16]  However, in posing a hypothetical question, the ALJ is not required to include findings the ALJ properly rejects, nor must he accept the VE's responses to hypothetical questions that include unsupported allegations.[17]

In this case, substantial evidence supports the ALJ's conclusion that the "marked" limitation in social functioning assessed by Dr. Benton was entitled to only some weight.  The evidence in the record that is cited by the ALJ, as summarized above, includes Plaintiff's active participation in church activities as an usher and bible study group member, Plaintiff's ability to provide support and assistance to her grieving aunt, and Plaintiff's Meridian case management notes which show that she was interested in working as a way to increase social interaction and that she wanted to participate in vocational rehabilitation with a specific goal of working as a cook.  The ALJ accounted for Plaintiff's documented social difficulties by restricting her to only occasional interaction with coworkers and supervisors and no public contact work.  *See* R. 34.

"Occasionally" means "occurring from very little up to one-third of the time."  Social Security Ruling (SSR) 83–10, 1983 WL 31251, at *5 (S.S.A.

---

[16] Wilson v. Barnhart, 284 F3d.1219, 1227 (11th Cir. 2002).

[17] Wright v. Comm'r of Soc. Sec., 327 Fed. Appx. 135, 137 (11th Cir. 2009).

1983); SSR 96–6p, 1996 WL 374185, at *3 (S.S.A.1996) (noting that "occasionally" requires no more than two hours in an eight hour day).  It would be an understatement to say that the hypothetical that Plaintiff's representative posed to the VE on this point is lacking in clarity:

> ATTY: I, I think, as, as I was working through the question with the Administrative Law Judge to hone it down, that what I'm really asking is, assume that, in these jobs that you've mentioned, the person does not normally have to interact more than a third of the workday with either supervisors or coworkers. But then assume that, even with that limitation of only having to do that a third of the time, that they'll still be inappropriate a third of that time, or two thirds of that time, between one third and two thirds, I guess.

R. 84.  After the ALJ further attempted to clarify the question, the VE responded "When they do interact . . . they need to be able to be appropriate. . . . [I]f they have a substantial loss in that ability, which two thirds, to me, is a substantial loss, then that would eliminate jobs."

The representative's hypothetical rests on the unsupported allegation that Plaintiff would be limited in appropriate social interaction to some fractional period of time less than one-third of the workday.  But the ALJ was not required to include that finding in the hypothetical because the ALJ properly rejected Dr. Benton's assessment of a "marked" limitation, which is the only evidence that Plaintiff points to as support for her allegation.

The ALJ likewise was not required to accept the VE's response to the representative's unsupported hypothetical.  *See Wright v. Comm'r of Soc. Sec.*, 327 Fed. Appx. 135, 137 (11th Cir. 2009).   On this record, the Court finds that the ALJ's RFC assessment with respect to Plaintiff's mental limitations is supported by substantial evidence.

## V.  CONCLUSION

In view of the foregoing, it is hereby **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida this 18th day of February 2016.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636**.